**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**TONY B. GILLET**                                    **CIVIL ACTION**

**VERSUS**                                            **NO. 11-2880**

**JAMES M. LEBLANC, et al.**                          **SECTION: "G"(4)**

## ORDER AND REASONS

Before the Court are Plaintiff Tony Gillet's ("Plaintiff") objections[1] to the March 28, 2012,

Report and Recommendation of United States Magistrate Judge Karen Wells Roby.[2] Plaintiff, a state

prisoner sentenced to the custody of the Louisiana Department of Public Safety and Corrections and

confined to the B.B. "Sixty" Rayburn Correction Center ("RCC") filed a complaint pursuant to 42

U.S.C. § 1983 alleging that his constitutional rights were violated by a policy at RCC, that prohibits

him from receiving packages and publications by mail.[3] He also complains that Secretary James M.

LeBlanc of the Louisiana Department of Public Safety and Corrections ("DOC"), Assistant DOC

Secretary Linda Ramsey, and Warden Robert Tanner, each sued in his individual and official

capacities (collectively, "Defendants"), denied him an adequate administrative grievance procedure

("ARP") and a fair hearing on his challenge to the policy.[4] The Magistrate Judge recommends that

the Court dismiss with prejudice Plaintiff's complaint.[5] Plaintiff objects to the Magistrate Judge's

Report and Recommendation arguing: (1) his claims under the First Amendment are not frivolous

---

[1] Rec. Doc. 27.

[2] Rec. Doc. 26.

[3] Rec. Doc. 1 at 9.

[4] *Id*. at 9–10.

[5] Rec. Doc. 26.

1

and (2) the Magistrate Judge erred in failing to appoint him counsel. After reviewing the complaint, the Magistrate Judge's Report and Recommendation, Plaintiff's objections, the record, and the applicable law, for the following reasons, the Court will adopt the Magistrate Judge's Report and Recommendation and overrule Plaintiff's objections.

## I.  Background

### A.  Factual Background[6]

Plaintiff was housed in RCC under disciplinary detention at a level one lockdown status in the Special Management Unit ("SMU").[7] Plaintiff was incarcerated as a multiple offender for a 1998 distribution of cocaine conviction, for which he received a fifteen year sentence.[8] Plaintiff was on "disciplinary lockdown status" when he arrived at RCC on February 1, 2010, from Forcht-Wade Correctional Center.[9] Plaintiff indicated that he had been on disciplinary lockdown since his arrival at RCC because of several intervening disciplinary charges which extended his disciplinary lockdown by 90 days each time.[10]

On September 4, 2010, September 11, 2010, October 2, 2010, February 16, 2011 and March 1, 2011, the RCC mailroom sent Plaintiff "rejection notices" for religious books he ordered.[11] The

---

[6] The following background derives from Plaintiff's complaint, and the Court will consider allegations as true for the purposes of considering Plaintiff's objections. On January 12 and February 16, 2012, the Magistrate Judge conducted hearings pursuant to *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges to have occurred and the legal basis for the claims. The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[7] Rec. Doc. 1 at 9.

[8] Rec. Doc. 26 at 3.

[9] *Id.*

[10] *Id.* at 4.

[11] Rec. Doc. 1 at 9.

mailroom cited SMU Posted Policy No. 4, prohibiting level one and level two inmates from receiving packages or periodicals through the mail, except religious materials received through the Chaplain's office.[12] Plaintiff argues that SMU Posted Policy No. 4 contradicts DOC Regulation C-02-009, which allows inmates in disciplinary detention to receive and send correspondence.[13] He also complains that SMU Posted Policy No. 4 is an overly broad, blanket policy.[14]

On September 21, 2010, Plaintiff filed a grievance complaint, which was denied by Colonel Larry Grow.[15] On September 30, 2010, Plaintiff appealed the decision to the Secretary of the Department of Corrections.[16] Assistant Secretary Linda Ramsay responded, indicating that the matter had been reviewed by a specialist and no further investigation was warranted.[17]

In this action, Plaintiff seeks a formal written apology from Defendants and an order directing Warden Tanner to re-write Posted Policy No. 4 to allow access to publications through mail. He also seeks an order directing Secretary LeBlanc to hire or the Court to appoint a legal analyst to perform paralegal research and litigate prisoners' ARP appeals. He further asks for the award of costs and $1,500.00 in punitive damages against each Defendant.[18] On December 14, 2011, Plaintiff filed a supplemental complaint alleging that he was denied access to carbon copy paper and

---

[12] *Id.*

[13] *Id.* at 9–10 (citing The Louisiana Department of Public Safety and Corrections Disciplinary Rules and Procedures for Adult Offenders Handbook).

[14] Rec. Doc. 26 at 4.

[15] Rec. Doc. 1 at 10.

[16] *Id.*

[17] *Id.*

[18] *Id.*

a copy of his ARP.[19]

**B. Report and Recommendation Findings**

On March 28, 2012, the Magistrate Judge recommended that Plaintiff's claims be dismissed with prejudice "as frivolous, for failure to state a claim upon which relief can be granted, and/or for seeking relief against an immune defendant pursuant to 28 U.S.C. §§ 1915(e), 1915A, and 42 U.S.C. § 1997e as applicable."[20] In the Report and Recommendation, the Magistrate Judge found that Plaintiff's claims for monetary relief against Defendants in their official capacity were barred by the Eleventh Amendment.[21] The Magistrate Judge found Plaintiff had alleged enough of a factual basis to meet his initial burden of overcoming the Eleventh Amendment immunity bar for his claims for injunctive relief.[22] The Magistrate Judge then addressed each of Plaintiff's three constitutional arguments in turn SMU Posted Policy No. 4 : (1) violates his First Amendment right to free speech by denying his ability to obtain packages and publications through the mail, (2) his Eighth Amendment right to be free from cruel and unusual or excessive punishment caused by the other constitutional violations, and (3) his Fourteenth Amendment right to a fair and impartial hearing prior to restricting his right to receive packages and publications.[23]

The Magistrate Judge reviewed DOC Regulation C-02-009 and SMU Posted Policy No. 4, concluding that the two policies do not conflict with each other.[24] The Magistrate Judge found

---

[19] Rec. Doc. 8.

[20] Rec. Doc. 26 at 27.

[21] *Id.* at 7–8.

[22] *Id.* at 8 (citing *Ex Parte Young*, 209 U.S. 123, 155–156 (1908)).

[23] *Id.* at 9.

[24] *Id.* at 10–12.

4

Posted Policy No. 4 does not violate the First Amendment because RCC had a legitimate and reasonable basis for the package and publication restrictions imposed on Plaintiff as a level one inmate.[25] The Magistrate Judge found no evidence establishing that the restrictions placed on Plaintiff were cruel and unusual in violation of the Eighth Amendment.[26] The Magistrate Judge concluded that Plaintiff failed to allege a basis for his due process claims arising from the policy restricting his ability to receive packages and publications.[27] Finally, the Magistrate Judge concluded that Plaintiff's complaints against Defendants in their individual capacities should be dismissed as frivolous and for failure to state a claim for which relief can be granted.[28]

## II. Objections

### A.  Plaintiff's Objections

Plaintiff timely filed his objection to the Report and Recommendation on April 10, 2012.[29] Plaintiff argues that the Magistrate Judge incorrectly held that his First Amendment claim is frivolous. For the first time, Plaintiff argues RCC's stated rehabilitation objective for SMU Posted Policy No. 4 is "fire hazard and health concerns."[30] He contends that the Magistrate Judge relied on a different objective: imposition of harsher sanctions on inmates already segregated for their violations of prison rules.[31] He asserts that Defendants "offered no evidence that the policy achieves

---

[25] *Id.* at 16.

[26] *Id.* at 19.

[27] *Id.* at 20.

[28] *Id.* at 23, 25, 27.

[29] Rec. Doc. 27.

[30] *Id.* at 2–3.

[31] *Id.* at 4 (citing Rec. Doc. 26 at 15).

or could achieve its stated rehabilitation purpose."[32] He contends that the Magistrate Judge erred in failing to examine "the fit between the policy and its rehabilitative goals whether the DOC's deprivation theory had any basis in real human psychology or had proven effective with RCC SMU inmates."[33] He argues there is "professional, psychological, testimonial, evidence in several cases that confirms that the publication ban in the SMU is linked to and correlated with severe psychological deterioration which may have a permanent effect on some, or all inmates, to some greater or lesser degree, varying inmate to inmate."[34]

Plaintiff cites *Mann v. Smith*,[35] for the proposition that a ban on newspapers and magazines violated prisoners' "First Amendment right, where justification of policy was desire to prevent fires and clogged toilets, but jail permitted inmates to possess other material that was flammable and capable of being used to interfere with plumbing."[36] Plaintiff argues the "blanket ban on publications" does not "meaningfully improve security" because RCC has many security measures in place and "a two publication limit in the Sleet Unit SMU for level one and a three publication limit in the Sun Unit SMU."[37] Based on the foregoing, Plaintiff asserts that no valid, rational connection exists between Posted Policy No. 4 and the stated rehabilitation objective.[38]

---

[32] *Id.*

[33] *Id.* at 5.

[34] *Id.* at 6.

[35] 796 F.2d 79 (5th Cir. 1986). In *Mann v. Smith*, the prison policy enforced a ban on all newspapers and magazines, with the asserted justifications for this policy being to prevent fires and clogged toilets. *Id.* at 82. The Fifth Circuit held that the policy was unconstitutional under the First Amendment, finding it was an "exaggerated response by jail officials to a legitimate need to preserve internal order and discipline and to maintain institutional security." *Id.*

[36] Rec. Doc. 27 at 7.

[37] *Id.* at 8.

[38] *Id.* at 10.

Plaintiff also objects to the Magistrate Judge's failure to appoint him counsel.[39] He requests that the Court grant him leave to file an amended complaint because his "claim is without proper representation and with merit."[40] He does not object to the Magistrate Judge's findings regarding Eleventh Amendment immunity or that SMU Posted Policy No. 4 does not violate the Eighth Amendment or the Fourteenth Amendment.

### B.  Defendants' Response

Defendants did not file a brief in opposition to Petitioner's objection despite receiving electronic notice of the filing on April 10, 2012. On November 13, 2013, Defendants filed a "Motion to Dismiss for Failure to Prosecute," alleging that Plaintiff was released from custody on September 17, 2013, and had not notified the Court of his change of address as required by the Magistrate Judge's February 16, 2012 minute entry.[41]

### III.  Standard of Review

### A. Review of the Magistrate Judge's Report and Recommendation

When designated by a district court to do so, a United States Magistrate Judge may consider prisoner petitions challenging the conditions of confinement and recommend their disposition to the District Court Judge in accordance with the Magistrate Judge's findings of fact and determinations of law.[42] A District Judge "may accept, reject, or modify the recommended disposition" of a

---

[39] *Id.* at 1.

[40] *Id.* at 18.

[41] Rec. Doc. 32.

[42] 28 U.S.C. § 636(b)(1)(B).

Magistrate Judge on a dispositive matter.[43]  The District Judge must "determine *de novo* any part of the [Report and Recommendation] that has been properly objected to."[44] However, a District Court's review is limited to plain error of parts of the report which are not properly objected to.[45]

### B. Standard for Frivolousness

A district court has broad discretion in determining the frivolous nature of a prisoner's complaint.[46] A complaint is frivolous if it lacks an arguable basis in law or fact.[47] A claim has no arguable basis in law if "it is based on an indisputably meritless legal theory."[48] It lacks a basis in fact if "the facts alleged are clearly baseless."[49] If a court finds that a prisoner's claims are frivolous, the court must dismiss the claims *sua sponte*.[50]

### III.  Law and Anaylsis

### A.  Plaintiff's First Amendment Claim

Plaintiff objects to the Magistrate Judge's finding that his First Amendment claim is frivolous. He alleges that he has a First Amendment right to freedom of speech that provides him the right to secure publications from a publisher for education, rehabilitative and religious purposes. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as

---

[43] Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1).

[44] Fed. R. Civ. P. 72(b)(3).

[45] *See Douglas v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending time to file objections from ten to fourteen days).

[46] *See Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998) (citation omitted).

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] *See* 28 U.S.C. § 1915A, 42 U.S.C. § 1997e(c).

8

a prisoner or with the legitimate penological objectives of the corrections system."[51] Among other things, the "Constitution protects the rights to receive information and ideas."[52] "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests."[53]

In determining whether a regulation or restriction is reasonable, the Court must employ a balancing test considering the following factors: (1) whether a rational connection exists between the regulation and a neutral, legitimate government interest; (2) whether alternative means exist for inmates to exercise the constitutional right at issue; (3) what impact the accommodation of the right would have on inmates, prison personnel, and allocation of prison resources; and (4) whether "ready alternatives" exist for furthering the governmental interest.[54] In *Beard v. Banks*, the Supreme Court upheld a prison policy denying newspapers, magazines and photographs "to a group of specially dangerous and recalcitrant inmates"[55] where the justifications for the prison's policy included "the need to motivate better behavior on the part of particularly difficult prisoners, the need to minimize the amount of property they control in their cells, and the need to ensure prison safety, by, for example, diminishing the amount of material a prisoner might use to start a cell fire."[56]

In his objections to the Report and Recommendation, Plaintiff argues, for the first time, that RCC's stated rehabilitation objective for SMU Posted Policy No. 4 is "fire hazard and health

---

[51] *Pell v. Procunier*, 417 U.S. 817, 822 (1974).

[52] *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972).

[53] *Turner v. Safley*, 482 U.S. 78, 89 (1987).

[54] *Beard v. Banks*, 548 U.S. 521, 529 (2006) (citing *Turner*, 482 U.S. at 89–90).

[55] *Id.* at 524–525.

[56] *Id.* at 530.

9

concerns."[57] He contends that the Magistrate Judge erred  in relying on a different objective: imposition of harsher sanctions on inmates already segregated for their violations of prison rules. The Fifth Circuit has noted the failure to present arguments to the Magistrate Judge can constitute a waiver of such argument.[58] However, even if Plaintiff has not waived his right to raise this argument, the Court finds Plaintiff's argument without merit.

> In a letter to Plaintiff dated September 29, 2010, Colonel Grow stated:

> Your assignment to the Special Management Unit is a result of your inability or unwillingness to obey the rules and regulations. If you wish to have the privileges afforded to offenders in general population, you should modify your behavior so you can be placed in general population.[59]

SMU Posted Policy No. 4 is imposed as part of the harsher sanctions on those inmates segregated from the general prison population for their violations of prison rules. At least one other district court  has affirmed the constitutionality of RCC's SMU Posted Policy No. 4, finding that "denying newspapers and other leisure materials to the worst-behaved inmates . . . was reasonably related to the legitimate penological purpose of providing increased incentives for better behavior."[60] The Fifth Circuit affirmed the district court's ruling without expressly addressing the constitutionality of

---

[57] Plaintiff cites a letter from Colonel Larry Grow dated April 13, 2011, stating: "By being placed in the Special Management Unit, you are deprived of certain privileges, such as receipt of packages including publications and periodicals. A concern of being allowed publications and periodicals on an unrestricted basis is the obvious fire hazard an health concerns." (Rec. Doc. 21-7).

[58] *See*, *e.g.*, *Cupit v. Whitley*, 28 F.3d 532, 535 n. 5 (5th Cir. 1994). *See also*, *Paterson–Leitch Co. v. Massachusetts Municipal Wholesale Electric Co.*, 840 F.2d 985, 990–91 (1st Cir. 1988) (explaining that a party "has a duty to put its best foot forward" before the Magistrate Judge-i.e., "to spell out its arguments squarely and distinctly"-and, accordingly, that a party's entitlement to de novo review before the district court upon filing objections to the Report and Recommendation of the Magistrate Judge does not entitle it to raise issues at that stage that were not adequately presented to the Magistrate Judge).

[59] Rec. Doc. 22-2 at 3.

[60] *Tyson v. LeBlanc*, Civ. Action No. 10–1174, 2010 WL 5375955, at *25–29 (E.D. La. Nov. 19, 2010), adopted, 2010 WL 5376330 (E.D. La. Dec. 15, 2010).

Posted Policy No. 4.[61] Accordingly, the Court finds that a rational connection exists between SMU

Posted Policy No. 4 and a neutral, legitimate penological interest. Therefore, upon *de novo* review

of the issue, the Court finds Plaintiff's claims arising under the First Amendment are without merit

pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1), and 42 U.S.C. § 1997e(c), and must be

dismissed with prejudice.

**B.  Claims Related to the Magistrate Judge's Failure to Appoint Counsel**

Plaintiff alleges that the Magistrate Judge erred in failing to appoint him counsel. On March

28, 2012, the Magistrate Judge dismissed as moot Plaintiff's Motion to Appoint Counsel, noting that

the Report and Recommendation recommended that Plaintiff's complaint be dismissed as

frivolous.[62] Access to courts is protected by the First Amendment right to petition for redress of

grievances and the Fourteenth Amendment guarantees of procedural and substantive due process.[63]

Prisoners retain their constitutional right to court access, and that access must be "adequate,

effective, and meaningful."[64] "The fundamental constitutional right to access to the courts requires

prison authorities to assist inmates in the preparation and filing of meaningful legal papers by

providing prisoners with adequate law libraries or adequate assistance from persons trained in the

law."[65] This right can be satisfied either through appointed counsel, access to a law library, or access

---

[61] *See Tyson v. Leblanc*, 431 F. App'x 371, 372 (5th Cir. 2011) ("With respect to [Plaintiff's] claim regarding restrictions on inmate purchases of reading materials and radios, his attempt to distinguish *Beard v. Banks*, is unavailing, and he has, therefore, failed to show the district court erred in granting summary judgment.").

[62] Rec. Doc. 25.

[63] *Jackson v. Procunier*, 789 F.2d 307, 309–10 (5th Cir.1986).

[64] *Bounds v. Smith*, 430 U.S. 817, 822 (1977).

[65] *Id.* at 828.

to legally trained paraprofessionals.[66] Plaintiff has made no showing that he was denied adequate, effective, and meaningful court access simply because he was not appointed counsel to represent him in this matter. In fact, Plaintiff has been provided court access as demonstrated here. This allegation alone does not rise to the level of a constitutional violation, and this allegation fails to state a claim upon which relief may be granted. Accordingly, upon *de novo* review of the Magistrate Judge's decision in this matter the Court overrules Plaintiff's objection.

### C. Report and Recommendation Findings Not Objected To

The Magistrate Judge found that Plaintiff's claims for monetary relief against Defendants in their official capacities were barred by the Eleventh Amendment. The Eleventh Amendment prohibits federal courts from entertaining a suit for monetary damages brought by a citizen against his own State.[67] Finding no plain error, the Court adopts the Magistrate Judge's finding that Plaintiff's claims for monetary relief against Defendants in their official capacities is barred by the Eleventh Amendment.

The Magistrate Judge also found that Plaintiff suffered no violation of his Eighth Amendment rights. The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement "which are incompatible with the evolving standards of decency that mark the progress of a maturing society . . . or which involve the unnecessary and wanton infliction of pain."[68]"[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh,

---

[66] *Id.* at 830–31.

[67] *Pennhurst State School v. Halderman*, 465 U.S. 89, 09 (1984).

[68] *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976) (citations and quotation marks omitted).

they are part of the penalty that criminal offenders pay for their offenses against society."[69] In this case, Plaintiff has only alleged that he was prohibited from receiving packages and publications while on level one and level two disciplinary confinement. These allegations alone do not rise to the level of a constitutional violations, and these allegations fail to state a claim upon which relief may be granted.  Reviewing for plain error, the Court finds none and adopts the Magistrate Judge's finding that SMU Posted Policy No. 4 does not violate the Eighth Amendment.

The Magistrate Judge concluded that Plaintiff failed to allege a basis for his due process claims. Plaintiff did not allege that SMU Posted Policy No. 4 imposes the type of punishment that would invoke additional due process protections[70] Reviewing for plain error and finding none, the Court adopts the Magistrate Judge's finding that SMU Posted Policy No. 4 does not violate the Fourteenth Amendment.

Finally, the Magistrate Judge concluded that Plaintiff's complaints against Defendants in their individual capacities should be dismissed as frivolous and for failure to state a claim for which relief can be granted. Reviewing the issue for pain error and having established that SMU Posted policy No. 4 is not unconstitutional, the Court adopts the Magistrate Judge's finding that the claims against Defendants in their individual capacities are without merit.

---

[69] *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

[70] *See Sandin v. Conner*, 515 U.S. 472, 486 (1995).

## IV. Conclusion

For the foregoing reasons, the Court affirms the Magistrate Judge's Report and Recommendation. Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's objections are **OVERRULED**;

**IT IS FURTHER ORDERED** that the Court adopts the Report and Recommendation issued by the Magistrate Judge;

**IT IS FURTHER ORDERED** that Plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss for Failure to Prosecute is **DENIED AS MOOT**.

**NEW ORLEANS, LOUISIANA,** this _11th_ day of July, 2014.

**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**

14